**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **PATRICK DUNN,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| **v.** | ) | |
| **MARATHON PETROLEUM** | ) | **2:18-cv-00024-TFM** |
| **COMPANY LP,** | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

## I.      INTRODUCTION

Defendants Motion to Dismiss is nothing more than an assembly of failed arguments by other title III ADA website and mobile application defendants made over the last five years. The arguments fail utterly and collapse under the weight of decisional law aligned against them.

The dispositive issue is, whether Marathon's website and mobile application are subject to Title III, ADA as a service of a public accommodation with a sufficient physical nexus alleged between the website and Marathon's branded service stations. As other courts establish, there is no need to reach Defendants red herring question of whether the website and mobile application are public accommodations in and of themselves. Defendants due process and primary jurisdiction arguments have been rejected repeatedly by other courts considering the issue.

As Mr. Dunn shows through a virtual mountain of case law, Marathon is liable under ADA statutes and regulations, so that the Motion to Dismiss is due to be denied.

## II.      STANDARD OF REVIEW.

To defeat a motion to dismiss, the First Amended Complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim meets this test for facial plausibility "when the plaintiff pleads the factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. Accordingly, the First Amended Complaint on its face must contain enough factual matter (taken as true) to raise a reasonable hope or expectation that discovery will reveal relevant evidence of each element of a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must be liberally construed, assuming the facts alleged as true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary allegations. *Id.*   A well-pled complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Twombly*, at 556.

## III.      PLAINTIFF'S ALLEGATIONS.

Patrick Dunn suffered spinal damage from an automobile accident that paralyzed him, restricting him to a wheelchair and almost entirely impairing the use of his hands. (Document 26, Paragraph 3). The Justice Department has specifically determined that limited manual dexterity in the hands is an ADA-covered impairment.

(Document 26, Paragraph 21).

Marathon owns and operates the public internet website www.mymarathonstation.com, the marathon mobile application, and the goods and services offered to the public by the website and mobile application. (Document 26, Paragraph 4). Marathon and its branded service stations included in the mymarathonstation.com website and corresponding mobile application are themselves a public accommodation under the ADA. 42 U.S.C. 12181(2),(7). Congressional history and the United States Justice Department hold that websites of public accommodations are covered by Title III. (Document 26, Paragraphs 32, 33).

Mr. Dunn repeatedly alleges the physical nexus between Marathon's website and mobile application on one hand, and the Marathon branded service stations on the other. The very name of the website and associated application is mymarathonstation.com, indicating from the outset that the website and application links the user to Marathon branded service stations. Mr. Dunn goes to the specific Marathon station named in the Complaint, as well as other Marathon stations across the Middle District. (Document 26, Paragraphs 5, 6).

Mr. Dunn would like to be able to use the website and mobile application in the same way people whose hands are not impaired use them: for services and benefits tied to the physical locations of Marathon branded service stations across the Middle District, as well as any remote services provided by the website and mobile application. (Document 26, Paragraph 6).

Marathon's Title III deficient website and mobile application offer numerous services to the able bodied. Those services are denied to Mr. Dunn both for the Marathon branded service stations and at the Marathon branded service stations.

(Document 26, Paragraph 5). Those services denied Mr. Dunn include but are not limited to:

1. An accessible website and mobile application that Mr. Dunn can independently use, Document 26, Paragraph 20;

2. Gas station locator, Document 26, Paragraph 35;

3. Route planner to the service station; Document 26, Paragraph 35;

4. Multiple deal offers for the service station, Document 26, Paragraph 35;

5. Play virtual games to earn rewards that can be used at the service stations; Document 26, Paragraph 52;

6. Register phone number to receive daily codes for deals at the service stations, Document 26, Paragraph 52;

7. Select and view service station features such as store hours, contact information, fuel types, accepted payment types, Document 26, Paragraph 52;

8. Access, view, and use the marathon rewards program at service stations, Document 26, Paragraph 52;

*Seven of the eight allegations directly and physically link the website and application to the service stations.*

The website and mobile application violate Title III, ADA because they fail to allow Mr. Dunn to use them in the same manner as individuals without disabilities. (Document 26, Paragraphs 35, 36). The website and mobile application fail to integrate alternative platforms that enable individuals with limited use of their hands the opportunity to use the alternative platforms to navigate and select items on the

page without using a mouse. (Document 26, paragraphs 35, 36). The website and mobile application do not provide for functions to be carried out using a keyboard or voice input, or other alternative assistive technologies[1] which Mr. Dunn can use. (Document 26, Paragraph 35).

Marathon's actions violate the following statutory and regulatory provisions of the ADA:

**1)** 42 U.S.C. § 12182(a), because its actions deny Plaintiff full and equal enjoyment of Defendant's goods and services;

**2)** 42 U.S.C. § 12182(b)(1)(A)(i), because Defendant's actions deny Plaintiff equal participation in goods and services offered by the Defendant;

**3)** 42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because Plaintiff is provided both separate and unequal benefits of Defendant's goods and services;

**4)** 42 U.S.C. § 12182(b)(1)(B), because Defendant does not provide its goods and services in the most integrated setting appropriate;

**5)** 28 C.F.R. 36.303(c), because Defendant has failed to provide auxiliary aids and services where necessary to ensure effective communication with the Plaintiff.

(Document 26, Paragraphs 38, 54).

Plaintiff's liability case is premised on the ADA title III statues and regulations

---

[1] Other alternative assistive technologies include trackballs, adaptive switches, head-controlled pointing systems, and other alternative adaptive technologies. Those types of devices would enable Mr. Dunn to control the mouse pointer to navigate the website and applications. These options are commercially available and compatible with Apple and Microsoft.

above only. Mr. Dunn does not allege there are a particular set of mandatory technical regulations for websites that establish compliance or non-compliance as a matter of law, such as the Design Standards function for architectural barriers. (Document 26, Paragraph 39, 55). On the issue of remedy only, the plaintiff suggests, consistent with the Department of Justice determinations, that the Defendants might want to use WCAG 2.0 guidelines. (Document 26, Paragraph 39, 55).

## IV.   ARGUMENT

### A.   MARATHON'S WEBSITE AND MOBILE APPLICATION ARE SUBJECT TO TITLE III, ADA, AS A SERVICE OF A PUBLIC ACCOMMODATION WITH A SUFFICIENT PHYSICAL CONNECTION ALLEGED BETWEEN THE WEBSITE AND MARATHON'S BRANDED SERVICE STATIONS.

Marathon devotes a sizeable portion of its argument to discussing whether its website and mobile application are, themselves, public accommodations. That argument is misdirected, because the Plaintiff's Complaint pleads liability throughout *in terms of deficient services of a public accommodation*. See, e.g., Document 26, Paragraphs 32, 33, 38, 54.

Plaintiff does not argue one way or another whether Marathon's website or mobile application are, themselves, public accommodations; that disputed body of law is not raised by Mr. Dunn's claims.

*Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340 (S.D. Fla. 2017)[2] clearly illustrates Mr. Dunn's point that the issue of whether the website and mobile applications are themselves a public accommodation is irrelevant to the issue of Mr. Dunn's claims about the website *as a service of a public accommodation*. In *Gil*, the Court, in ordering an injunction for the visually impaired plaintiff, noted an issue

---

[2] All cases cited by Plaintiff are attached as an Exhibit to this Memorandum.

presented was whether Winn Dixie's website was subject to the ADA *as a service of a public accommodation or whether the website was a public accommodation in and of itself*. 257 F. Supp. 3d 1342. The Court noted that where a website is heavily integrated with physical store locations and operates as a gateway to physical store locations, then a website *is a service of a public accommodation* and covered by the ADA. 257 F. Supp. 3d 1348, citing *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 953–55 (N.D. Cal. 2006); *see also Gomez v. J. Lindeberg, Inc.*, No. 16–22966, ECF No. 23, at *3 (S.D. Fla. Oct. 17, 2016). <u>*Gil v. Winn-Dixie Stores, Inc.*</u>, 257 F. Supp. 3d 1340, 1348 (S.D. Fla. 2017). The Court held that *it need not decide whether Winn Dixie's website was a public accommodation in and of itself,* because the factual findings demonstrated the website was heavily integrated with Winn Dixie's physical stores and operated as a gateway to the physical store locations. 257 F. Supp. 3d 1349.

The Court in <u>*Castillo v. Jo-Ann Stores, LLC*</u>, 286 F. Supp. 3d 870 (N.D. Ohio 2018), also held it need not determine whether a website itself was a public accommodation, when a sufficient nexus between the website and the brick and mortar stores was alleged. 286 F. Supp. 3d 881.

That is a common holding that in website and mobile application cases alleging violations of Title III, ADA. For further example, the Court in <u>*Reed v. CVS Pharmacy, Inc.*</u>, No. CV 17-3877-MWF (SKX), 2017 WL 4457508, (C.D. Cal. Oct. 3, 2017) wrote that the ADA applies to <u>services of a place of public accommodation</u>, not just services <u>inside</u> that place, and that with a showing of a nexus between a business's online services and a physical location, the ADA plaintiff could challenge the digital offerings of a physical business. <u>*Gorecki v. Hobby Lobby Stores, Inc.*</u>, No. CV 17-1131-JFW(SKX), 2017 WL 2957736, (C.D. Cal. June 15, 2017) also exemplifies a court's

holdings that an ADA title III plaintiff may challenge the website of a public accommodation as a service of a public accommodation.

The process of reviewing Mr. Dunn's claims will provide the Court with many more cases exemplifying that websites and mobile applications can properly be challenged as a *service* of public accommodation instead of analyzed as to being public accommodations themselves.

Mr. Dunn alleges that the website and mobile applications' deficiencies constitute a denial of the full and equal enjoyment of the website and mobile application's service, which are directly linked with the service stations. (pages 3-4 in this brief). pursuant to 42 U.S.C. 12182(a). In other words, Mr. Dunn claims that Marathon failed to provide him full and equal enjoyment of goods and services offered by and for its physical stores by not maintaining a fully accessible and usable website and application. In each of the following cases the Court permitted identical ADA title III plaintiff's claims for full and equal enjoyment of websites and applications to proceed over defendants dispositive motions with the same arguments presented by Marathon in this case. *Robles v. Yum! Brands, Inc.*, No. 216CV08211ODWSS, 2018 WL 566781, (C.D. Cal. Jan. 24, 2018); *Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870 (N.D. Ohio 2018); *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340, 1348 (S.D. Fla. 2017); *Ramos v. Uber Techs., Inc.*, No. CIV.A. SA-14-CA-502, 2015 WL 222414, (W.D. Tex. Jan. 14, 2015); *Gorecki v. Dave & Buster's, Inc.*, No. CV171138PSGAGRX, 2017 WL 6371367, (C.D. Cal. Oct. 10, 2017); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 368 (E.D.N.Y. 2017); *Access Now, Inc. v. Blue Apron, LLC*, No. 17-CV-116-JL, 2017 WL 5186354, (D.N.H. Nov. 8, 2017); *Gathers v. 1-800-Flowers.com, Inc.*, No. 17-CV-10273-IT, 2018 WL 839381, (D. Mass. Feb. 12, 2018); *Reed v. CVS Pharmacy, Inc.*, No. CV 17-3877-MWF (SKX), 2017 WL

4457508, (C.D. Cal. Oct. 3, 2017); _Suvino v. Time Warner Cable, Inc._, No. 16 CV 7046-LTS-BCM, 2017 WL 3834777, at *1 (S.D.N.Y. Aug. 31, 2017); _Gorecki v. Hobby Lobby Stores, Inc._, No. CV 17-1131-JFW(SKX), 2017 WL 2957736, (C.D. Cal. June 15, 2017).

Mr. Dunn further alleges he was denied participation in goods and services or provided unequal services in relation to the goods and services provided within the service stations, by Marathon's failure to maintain fully accessible website and mobile applications. Again, this claim is as to services of a public accommodation, not an argument that the website and mobile application are themselves public accommodations. The claim is brought pursuant to 42 U.S.C. 12182(b)(1)A)(i). Similar claims by the disabled as to websites and applications under the same statute were permitted by the Court in _Robles v. Yum! Brands, Inc._, 2018 WL 566781, (C.D. Cal. Jan. 24, 2018) and _Reed v. CVS Pharmacy, Inc._, No. CV 17-3877-MWF (SKX), 2017 WL 4457508, (C.D. Cal. Oct. 3, 2017).

Mr. Dunn's claims as to a denial of services that resulted in separate or unequal benefits in relation to the goods and services provided within the service stations, 42 U.S.C. 12182(b)(1)(A)(ii)-(iii) were also permitted by the Court in _Robles v. Yum_, supra.

Mr. Dunn's claims pursuant to 28 C.F.R. 36.303(c), for auxiliary services to ensure effective communication, have also been repeatedly upheld in the website and mobile application context. _Gorecki v. Hobby Lobby_, _Supra_ ("congress intended that the ADA address not only physical barriers but also communication barriers"); _Gorecki v. Dave & Busters_, _Supra_; _Access Now v. Blue Apron Supra, Robles v. Yum_, _Supra_. The _Gorecki v. Hobby Lobby_ Court was particularly clear:

> The Court concludes based on the DOJ's statements and actions that Title III's general prohibition of discrimination on the basis of disability, and its requirements to provide appropriate auxiliary aids and services, where necessary to ensure effective communication, place an affirmative obligation . . . to ensure disabled individuals have as full and equal enjoyment of their websites as non-disabled individuals. _Gorecki v. Hobby Lobby Stores, Inc._, No. CV 17-1131-JFW(SKX), 2017 WL 2957736, at *5 (C.D. Cal. June 15, 2017)

Of course, in all these claims, whether the Defendant complied with the ADA mandates that the website be equally accessible to the disabled was held to be a fact question. _Robles v. Yum_ at page 5; _Blue Apron_.

This review of Mr. Dunn's claims establishes that his claims relate to challenging the website as a service of a public accommodation not as a public accommodation itself. Mr. Dunn has properly alleged that the website has a sufficient physical nexus with the service station location and operates as a gateway to physical store locations, so that the website and mobile application are services of the public accommodation Marathon and its branded services stations,(see this brief 3-4, 10-11); _Gil_, 257 F. Supp 3d at 1348 and cases cited therein; _Reed v. CVS Pharmacy_, _supra_; _Gorecki v. Hobby Lobby_. Accordingly, Mr. Dunn's claims are due to be considered in this motion to dismiss as what they are- claims that Marathon failed to provide him services offered by and for its service stations by not maintaining a fully accessible and usable website and mobile application. Marathon's argument that the claims must be evaluated in terms of whether the website and mobile application are websites in and of themselves fails in light of clear repeated holdings in decisional law.

Marathon's argument that there are no allegations of a physical tie between the websites/applications and the service stations is false. Mr. Dunn has clearly and repeatedly alleged a heavy physical nexus between the website and mobile application on one hand and the service stations on the other, with the website and mobile application acting as a gateway to the service station. See Pages 3 through 4, *infra*. Mr. Dunn has made allegations about the gas stations locator, which obviously provides a physical connection to the service station, in as much as it shows where the station is; the route planner provides a physical tie to the service station, again because it shows how to get to the station; the multiple deals offered digitally are tied to the service station since that is where the deal is offered for; the virtual games to earn rewards are tied to the service stations, because the rewards can be used at the service stations; digitally registering a phone number to receive codes for deals at the service station is obviously tied to the service station; selecting and viewing stations features such as store hours, contact information, food types, and accepted payment types, are tied to the service station; and digitally accessing, viewing and using the Marathon rewards program at service stations is tied to the service stations.

Given the sheer number and magnitude of the connections between the digital website and mobile application to Marathon service stations, it is borderline frivolous for Marathon to argue as it does, that there is an insufficient physical connection between them.

Although the physical connection speaks for itself and is sufficient especially given the standards of review based on the well-pleaded facts, there is more yet in Mr. Dunn's favor.

Multiple cases involving website and mobile application claims have addressed what constitutes a sufficient physical nexus between the title III ADA plaintiff's claims for deficient websites and applications and physical brick and mortar stores. In *Robles v. Yum*, *supra*, the Court determined there was a sufficient physical nexus where the plaintiff argued that the websites store locator, ordering system, and various coupons for the store provided a sufficient nexus. In *Castillo v. Jo-Ann Stores*, the Court found that the store locator, information about sales at the stores, offers for discounts at the stores were a sufficient physical nexus. In *Gorecki v. Dave & Busters*, the court held the store locator, directions to the store, ability to book an event at the store and gift card purchasing for the store were sufficient physical connections. In *Andrews v. Blick Art Materials*, supra, the court held that the store locator and being able to pick up an online purchase at the store was a sufficient physical nexus. Finally, in *Reed v. CVS*, supra, the court held that the store locator, special offers, and discount on products in the stores was a sufficient physical nexus.

Mr. Dunn's allegations of the physical nexus between Marathon's website and mobile application and service stations are virtually identical in substance to the alleged physical nexus in the cited case law, which was held by multiple courts to be sufficient.  Mr. Dunn, too, shows the nexus by store locators; route planners; a myriad of deals, promotions, rewards linked to the service station; info on store hours, fuel types, payments accepted; and more. Mr. Dunn has alleged a sufficient physical nexus between the service station and the website and mobile applications.

Marathon also appears to argue that Plaintiff's claims are barred unless Mr. Dunn can show the deficiencies in the website resulted in denying physical access to the service stations. Marathon cites *Rendon v. Valleycrest Production* 294 F. 3d 1279

(11th Cir. 2002) for that proposition. Marathon completely misperceives the Court's ruling.

In <u>Rendon</u>, a case actually cited by Mr. Dunn in most of his Title III Complaints, the 11th Circuit held that Title III covers both tangible barriers (physical barriers preventing a disabled person from entering an accommodations facilities) and intangible barriers (practices, policies, human activity). <u>Rendon</u> is explained by the Court in <u>Castillo v. Jo-Ann Stores, LLC</u>, 286 F. Supp 3d. at 880-881:

> In Rendon v. Valleycrest Prods., 294 F.3d 1279, 1285–86 (11th Cir. 2002), the Eleventh Circuit found that the plaintiffs had stated a claim under Title III of the ADA when they alleged that the television program "Who Wants To Be A Millionaire" discriminated against them in the way it operated its automated contestant hotline. 294 F.3d at 1280. The plaintiffs had audio or upper body impairments and they could either not hear the hotline's automated questions or key in their answers quickly enough on their telephone keypads to transmit their answers. Id. at 1280–1281. The defendant television program conceded, and the court agreed, that the show took place in a studio, a place of public accommodation, and that the automated telephone system screened out many disabled people, i.e., it was discriminatory. Id. at 1283. The defendant argued that "the Millionaire contestant hotline *879 may not serve as the basis for a Title III claim because it is not itself a public accommodation or a physical barrier to entry erected at a public accommodation." Id. The Eleventh Circuit disagreed:
>
>> We find this argument entirely unpersuasive. A reading of the plain and unambiguous[ ] statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and

> *privileges, see 42 U.S.C. § 12182(b)(2)(A)(i)-(ii).[ ]*
> *There is nothing in the text of the statute to suggest*
> *that discrimination via an imposition of screening or*
> *eligibility requirements must occur on site to offend*
> *the ADA. Id. at 1283–1284 (footnote omitted).*

> *Rendon undercuts, rather than supports, Jo–Ann's argument that*
> *Castillo's Complaint is deficient because it only "alleges that*
> *Plaintiff purportedly was deterred from visiting a retail store*
> *because she allegedly could not locate such stores on the*
> *Website" and fails to allege "that she was denied access to any*
> *of Defendant's retail locations...." Doc. 10, p. 13.*
> *The Rendon court rejected the argument that the complained-of*
> *barrier to access must be located on-site at a physical location.*
> *As observed in Gil v. Winn Dixie Stores, Inc., 242 F.Supp.3d 1315*
> *(S.D.Fla. 2017), Rendon held that the plaintiffs stated a claim*
> *because they alleged the automated system was inaccessible to*
> *them and thus "denied them access to a privilege (competing in*
> *the television show) offered by a public accommodation (the*
> *television studio)." 242 F.Supp.3d at 1319–1320 (citing Rendon,*
> *294 F.3d at 1284–1286).*

*Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870, 878–79 (N.D. Ohio 2018)

As the Court in *Castillo v. Jo-Ann Stores* has made clear: Rendon does not impose a requirement that an ADA plaintiff must be denied physical access to the accommodation in order to pursue a claim.

As with all its arguments, Marathon's position is not only unsupported by the case law but also directly rejected by it. In addition to the error Marathon has made in interpreting *Rendon* to require a denial of physical access as a prerequisite to Mr. Dunn's claims, Marathon's position runs afoul of other case law.

In *National Federation of the Blind v. Target*, 452 F. Supp 946 (N.D. Cal. 2006) Target made the same argument that Marathon propounds in this case, that physical access must be denied. The Court at 452 F. Supp 955 wrote:

*The case law does not support defendant's attempt to draw a false dichotomy between those services which impede physical access to a public accommodation and those merely offered by the facility. Such an interpretation would effectively limit the scope of Title III to the provision of ramps, elevators and other aids that operate to remove physical barriers to entry. Although the Ninth Circuit has determined that a place of public accommodation is a physical space, the court finds unconvincing defendant's attempt to bootstrap the definition of accessibility to this determination, effectively reading out of the ADA the broader provisions enacted by Congress....[I]n the present action, plaintiffs have alleged that the inaccessibility of Target.com denies the blind the ability to enjoy the services of Target stores. The Ninth Circuit has stated that the "ordinary meaning" of the ADA's prohibition against "discrimination in the enjoyment of goods, services, facilities or privileges, is 'that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services.' " Weyer [v. Twentieth Century Fox Film Corp.], 198 F.3d [1104] at 1115 [ (9th Cir. 2000) ] (emphasis added). Defendant's argument is unpersuasive and the court declines to dismiss the action for failure to allege a denial of physical access to the Target stores. . . "[T]o the extent that plaintiffs allege that the inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in Target stores, the plaintiffs state a claim, and the motion to dismiss is denied".*

Marathon's Motion to Dismiss is unfounded and contradictory to case law. It is due to be denied.

### B. MARATHON IS NOT DENIED DUE PROCESS BY MR. DUNN'S ADA TITLE III STATUTORY AND REGULATORY CLAIMS.

Marathon argues that there are not enough regulations about websites and mobile applications to provide due process to it in relation to Mr. Dunn's claims. Mr. Dunn's claims in this case come from 42 U.S.C. 12182 and 28 C.F.R. 36.303, as indicated throughout the brief. Defendants have had years of notice that they should comply with the ADA. Defendants do not challenge any specific existing statute or regulations as impermissibly vague or otherwise unconstitutional. Instead, Marathon just generally claims there needs to be more statutes and regulations with more, better information or guidance.

Marathon's vague due proves argument has been repeatedly rejected by every Court considering the argument.[3]

In *Robles v. Yum*, *Supra*, the Court, addressing these same due process arguments, wrote that lack of specific guidelines about websites or applications from the Justice Department does not excuse public accommodations from complying with ADA's general mandates. Further, the Court held that given the Justice Departments consistent position since 1996 that the ADA applies to websites, there was sufficient notice that the website under title III statutes and regulations had to provide full and equal access to the disabled. *Robles v. Yum*, Page 4-5.

---

[3] *Robles v. Domino's Pizza*, 2017 WL 1330216 is distinguishable because in it the Plaintiff did not seek liability based on ADA Title III regulations and statutes. Instead, in a radical deviation from standard ADA plaintiff practice, the plaintiff instead sought to impose liability based on technical guidelines not required by the Department of Justice. The Court properly held it would violate due process for the court to impose technical guidelines not approved by the Justice Department as a universal accessibility standard, and to do so in a summary judgment proceeding. That case will be discussed in detail later in the brief.

In *Gorecki v. Hobby Lobby*, *supra*, the Court addressed Defendants argument that absent additional Justice Department regulations, Plaintiff's claims as to its website violated due process. The Court wrote "*lack of specific regulations does not eliminate Hobby Lobby's obligation to comply with the ADA or excuse its failure to comply with the mandates of the ADA*". *Gorecki v. Hobby Lobby* at page 4.

The Court in *Andrews v. Blick Art Materials* issued a compelling rejection of the argument presented by Marathon:

> *The defendant's principal complaint appears to be that it wants there to be black-and-white rules for ADA compliance, and here, there may be shades of gray. But the anti-discrimination provisions the defendant is accused of violating are not simple checklists of clear-cut rules—they are standards that are meant to be applied contextually and flexibly. The "gray" the defendant complains of is a feature of the Act.*

> *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 403–04 (E.D.N.Y. 2017).

In ruling against the Defendant, the Court again held there was no due process violations involved in Plaintiff's use of 42 U.S.C. 12182 claims to address deficiencies in defendant's website.

In *Access Now v. Blue Apron*, *Supra*, the Court reached the identical conclusion as the other Courts who addressed the issue raised by Marathon. The Court, noting Defendants argument that there were insufficient website regulations to guarantee due process, held that although such regulations might provide a greater level of certainty about compliance, the Defendant "*must still comply with Title III's more general prohibitions on disability based discrimination*". *Blue Apron* at page 5. The Court further held that the ADA itself, through its existing provisions, provided sufficient notice to alleviate due process concerns. *Id*. Again, the Court rejected the

same argument as Marathon's by noting that plaintiff's claims under the ADA title III general anti-discrimination statutes were indeed sufficient.

The Court in _Reed v. CVS Pharmacy_, addressed similar arguments as Marathon's. CVS claimed there was not clear enough regulations as to websites to establish due process. The Court strongly rejected that argument:

> _CVS' contention amounts to a request to refrain from enforcing business' obligations under the ADA until the DOJ promulgates what it deems to be specific enough guidelines, a requirement that would eviscerate the ADA. The DOJ's position that the ADA applies to websites being clear, it is no matter that the ADA and the DOJ fail to describe exactly how any given website must be made accessible to people with visual impairments. Indeed, this is often the case with the ADA's requirements, because the ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements. This flexibility is a feature, not a bug, and certainly not a violation of due process._

_Reed v. CVS Pharmacy, Inc._, No. 2017 WL 4457508, at *5 (C.D. Cal. Oct. 3, 2017).

The Court in _Castillo v. Jo-Ann Stores_ also addressed the defendant's argument that there was insufficient Justice Department regulation as to website access liability to provide due process. The Court held with the plaintiff, who provided a United States statute literally saying that lack of technical assistance from the Justice Department does not excuse ADA compliance, 286 F. Supp 3d at 881-882:

> _Castillo submits that due process does not require the ADA to provide detailed guidelines, . . . and that the proper query for due process is whether a defendant knew it had to comply with the ADA, not whether it knows how to comply._

> _[the plaintiff cites 42 U.S.C. 12206(e), which states] An employer, public accommodation, or other entity covered under this chapter shall not be excused from compliance with the requirements of this chapter because of any failure to receive technical assistance_

> *under this section, including any failure in the development or*
> *dissemination of any technical assistance manual authorized by*
> *this section.*

<u>Castillo v. Jo-Ann Stores, LLC</u>, 286 F. Supp. 3d 870, 881 (N.D. Ohio 2018)

The statute on its face defeats Marathon's arguments for technical regulations.

Marathon's due process argument is due to be rejected as the same argument has been rejected by other Courts.

One point of clarification may be useful to the Court. Mr. Dunn seeks compliance with the statutes he has alleged violated as his remedy. As one possible method to achieve that compliance, a potential *remedy*, but not a liability claim, Mr. Dunn suggests Defendants website and mobile application might reach compliance by going by certain guidelines. (Document 26, Paragraphs 39, 55). Nevertheless, Mr. Dunn specifically "*does not allege that there is a particular set of mandatory regulations for websites that establishes compliance or non-compliance as a matter of law*". (Document 26, Paragraphs 39, 55). Defendant has not yet argued there are due process violations in relation to those guidelines mentioned as part of the remedy, and Marathon should not be permitted to sandbag and raise that argument for the first time in its reply. Nevertheless, should Marathon do so, prior case law makes clear that it is appropriate to address these guidelines as part of the remedy, not for imposing liability, and that when the guidelines are suggested as part of the remedy, it is premature to challenge the guidelines in dispositive motions that are actually about liability, such as motions to dismiss. <u>Robles v. Yum</u>; <u>Castillo v. Jo-Ann</u>; <u>Gorecki v. Dave & Busters</u>; <u>Access Now v. Blue Apron</u>; <u>Gathers v. 1-800 Flowers</u>; <u>Reed v. CVS</u>; <u>Gorecki v. Hobby Lobby</u>; <u>Andrews v. Blick Art Materials</u>.

**C.   MARATHON'S DEFENSE OF "PRIMARY JURISDICTION" IS LEGALLY AND FACTUALLY INADEQUATE AND DUE TO BE REJECTED.**

Marathon asks the Court to dismiss Mr. Dunn's Complaint pursuant to the primary jurisdiction doctrine pending further guidance from the DOJ as to website and mobile application accessibility standards. As with all defendant's other arguments, that argument too has been repeatedly rejected by other Courts.

The primary jurisdiction doctrine allows the relief sought by Marathon when an issue raised in litigation is within the special competence of an administrative agency. The doctrine is only to be used, however, if a claim requires resolution of an issue of first impression or a particularly complicated issue that Congress has committed to a regulating agency. *Robles v. Yum! Brands*, p.6, and cases cited therein.

A brief review of the Justice Departments proceedings as to website and mobile applications is more than sufficiently instructive to resolve Marathon's consistently rejected argument. As early as 1996, the Justice Department publicly stated the ADA applied to websites. *Hobby Lobby*, p.4. By 2000, the Justice Department confirmed that position at a congressional hearing on the ADA's applicability to websites. *Id*. Over time the Justice Department filed amicus briefs and statements of interest in multiple lawsuits, futher stating its determination. *Id*. In 2010, the Justice Department issued an Advance Notice of Proposed Rulemaking ("ANPR"), in which it restated and continued its prior positions. *Id*. Despite filing the ANPR, the Justice Department failed to propose and promulgate regulations as to website and mobile applications. On December 26, 2017, *seven years after filing the ANPR, the Justice Department withdrew the ANPR. 82 FR 6092 (December 15, 2017).* Notice of Withdrawal of Four Previously Announced Rulemaking Actions.

Marathon's argument has been soundly rejected by Courts previously considering the same argument as to websites and mobile applications. In _Robles v. Yum! Brands_ the Court held that the Justice Department's withdrawal of the ANPR is a "strong indication that the DOJ currently lacks an interest in specific requirements for website accessibility under the ADA." _Id_, at p.6. The _Robles v. Yum!_ Court further found that the case was not so unique as to invoke the primary jurisdiction doctrine, because in reality, Courts routinely address cases involving allegations of unequal access to goods and services produced through websites". _Id_.

The Court in _Gorecki v. Dave & Buster's_ rejected identical arguments to Marathon's primary jurisdiction argument. Like the situation in this case, the Court addressed why invoking primary jurisdiction was unnecessary and inappropriate when a plaintiff did not ask the Court for a highly technical remedy:

> However, as was the case in Hobby Lobby Stores, "Plaintiff does not ask the Court to fashion a remedy that adopts a specific technical rule. Instead, he requests an order requiring [Defendant] to comply with the DOJ's directive to ensure disabled individuals has a full and equal enjoyment of its website as non-disabled individuals." _Hobby Lobby Stores, 2017 WL 2957736, at *7_. At his stage of the litigation, this is not a case where a "federal administrative agency [must'] hire personnel with the specific skills needed to devise and implement the regulatory scheme" because "courts do not have the institutional competence to put together a coherent body of regulation." _Kirola v. City & Cty of S.F., 860 F.3d 1164, 1181 (9th Cir. 2017)_. Instead, the issue at present is strictly one of liability, and a "determination of liability does not necessarily require the Court to master complicated web standards, but rather asks the Court to make exactly the same sort of accessibility determinations that it regularly makes when evaluating he accessibility of physical locations." CVS Order at 10. What is required of the court at this time is a common exercise, as "federal courts have resolved effective communication claims under the ADA in wide variety of contexts – including cases involving allegations of unequal access to

> goods, benefits and services provided through websites." <u>Hobby Lobby Stores, 2017 WL 2957736, at \*7 (citing National Ass'n of the Deaf v. Netflix, Inc., 869 F. Supp, 2d 196, 205 n. 2(D. Mass 2012); National Fed'n of the Blind v. Target Corp., 452 F. Supp. 2d 946, 946+ (N.D. Cal. 2006)).</u>

> Because a finding of liability regarding the Website's compliance with ADA does not require sophisticated technical expertise beyond the ability of the Court, the Primary Jurisdiction doctrine is inapposite in this case. <u>Gorecki v. Dave & Buster's</u>, pgs. 4-5.

The Court in <u>Andrews v. Blick Art Materials</u> rejected applying primary jurisdiction doctrine in a title III ADA website case for the same reasons as the Court in <u>Dave & Buster's</u>: that "analyzing the text of the ADA and its regulations and deciding whether a business is in compliance with those laws is a task well within the competence of the judicial branch." 268 F. Supp. 3d at 401-402.

The Court in <u>Access Now v. Blue Apron</u>, also rejecting the application of the doctrine, wrote insightfully:

> [Congress has] tasked the DOJ with "providing guidance and technical expertise to develop standards that public accommodations must comply with under the ADA." It has not, however, charged the DOJ with determining whether a defendant's actions, or lack thereof, violate the ADA. This remains solely within the jurisdiction of the court.

> Nor is the DOJ's technical expertise "required to unravel intricate, technical facts" in this case. <u>Id</u>. The DOJ does not have special technical expertise in the areas of website coding or assistive technology. Indeed, in its ANPRM, the DOJ specifically sought "input from experts in the field of computer science, programming, networking, assistive technology, and other related fields" given the "complexity" of the issue. <u>ANPRM, 75 Fed. Reg. at 43,464</u>. Nor does it have particular expertise that federal courts may be lacking in making accessibility determinations. The primary jurisdiction doctrine is more properly invoked in cases involving agencies with highly technical expertise or expertise concerning highly specialized regulations.

"[T]he potential for delay inherent in the decision to refer" this issue to the DOJ, AMMA, 163 F.3d at 81, also weighs against such a referral in this case. The DOJ issued its ANPRM over seven years ago but has not yet promulgated any regulation. It has, to the contrary, affirmatively abandoned consideration of website-accessibility standards for the immediate future. Because the DOJ "has not taken any further action towards promulgating specific accessibility requirements and there is no reason to believe the department will issue rules any time in the near future," the "potential for delay while the federal administrative rulemaking process proceeds is great" and weights against invoking the primary jurisdiction doctrine in this case.

Hobby Lobby, 2017 WL 2957736, at *7. See also Andrews, 2017 WL 3278898, at *17. Blue Apron at 8-9.

Finally, the Court in Reed v. CVS also rejected the primary jurisdiction doctrine in relation to websites and mobile applications, again because the ADA Title III litigation under the ADA's anti-discrimination provisions is fully within the competence of the Court. The Court wrote that courts were able to rule on full and equal enjoyment cases, effective communication cases, unequal access cases, and accessibility. Id., at p. 5. The Court rejected the primary jurisdiction doctrine as inappropriate given the Court's competence to handle the case.

Every applicable case on invoking the primary jurisdiction doctrine is against Marathon. One case, consistently distinguished by every court addressing the issue, did apply the primary jurisdiction doctrine, Robles v. Domino's Pizza.

Robles v. Dominos Pizza LLC, 2017 WL 1330216 (C.D. Cal. Mar. 20, 2017) is indeed procedurally similar to this case and almost all the other cases cited in this brief. The title III plaintiff asserted statutory anti-discrimination provisions of the ADA in challenging Domino's website. However, Mr. Robles in the Dominos case radically departed from other reported cases by demanding the Court order the defendant

adopt a specific technical standard for web accessibility for purposes of determining liability in a title III claim. Mr. Robles sought, in the *Domino's* court's words, to impose on all regulated persons and entities a requirement that they comply with specific, technical regulations not adopted by the Justice Department and without specifying a particular level of success criteria. The *Dominos* court understandably concluded that (1) adoption of such technical rules as requested by Mr. Robles for determining technical standards for website accessibility was within the primary jurisdiction of the Justice Department and (2) it would violate due process for the Court to adopt in a summary judgment proceeding a requirement that the Web Content Access Guidelines ("WCAG") criteria would be the dispositive standard for website accessibility.

The D*ominos* case is distinguishable from this case, because Mr. Dunn does not ask the Court to adopt mandatory technical standards for accessibility. In fact, he does just the opposite, pleading explicitly that he does not allege that there is a particular set of mandatory regulations for websites that establish compliance and non-compliance as a matter of law. (Document 26, Paragraphs 39, 55). Because Mr. Dunn rejects the radical and improper approach of the plaintiff in the *Domino's* case, and indeed does just the opposite, the *Domino's* case is distinguishable.

The distinction Mr. Dunn just argued is the very distinction used by multiple Courts which have also distinguished the *Domino's* case on the subjects of due process and primary jurisdiction. For other cases distinguishing *Dominos*, where defendant asserts due process violations and primary jurisdiction See, *Robles v. Yum* at page 5. (Mr. Robles corrects his radical request from the *Domino's* case to challenge Yum's website on general statutory grounds of 42 USC 12182 "without reference to a particular technical standard"; the court finds Domino's distinguishable

because "in *Domino's* Plaintiff was seeking to require the Defendant to comply with WCAG guidelines, which admittedly were not required by any DOJ regulations"); *Gorecki v. Hobby Lobby,* at page 7. (*Domino's* is distinguishable because "the plaintiff there sought to 'impose on all regulated persons and entities a requirement that they comply with WCAG 2.0 guidelines without specifying a particular level of success criteria. . . plaintiff [in this case] does not ask the Court to fashion a remedy that adopts a specific technical rule. Instead, he requests Hobby Lobby . . . {provide} full and equal enjoyment".); *Gorecki v. Dave & Busters*, page 3-4, (distinguishing *Domino's* because *Gorecki* is not attempting to impose particular technical standards but instead seeks compliance with ADA title III); *Castillo v. Jo-Ann Stores* 286 F. Supp. 3d 881-882 (*Domino's* is distinguishable because in *Domino's* Plaintiff sought to impose specific technical guidelines whereas Castillo seeks simple compliance with ADA title III); *Reed v. CVS Pharmacy,* page 5, (*Domino's* is distinguishable because CVS plaintiff seeks only compliance with ADA title III and *Domino's* case involved Plaintiff's due process-violative request to adopt in a summary judgment proceeding specific technical standards not adopted by the Justice Department).

## V.    CONCLUSION

Mr. Dunn has shown that Marathon presented arguments thoroughly and repeatedly refuted by case law. Mr. Dunn, on the other hand, has literally taken all the winning arguments from ADA title III decisional law and fashioned them into this Complaint. Marathon's Motion to Dismiss is due to be Denied.

Respectfully Submitted this 8th Day of June 2018.

/s/ *Landis Sexton*

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
ADA Group LLC
4001 Carmichael Road, Suite 570
P.O. Box 231477 (36123)
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day filed with the Clerk of Court the aforementioned document for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 8th day of June, 2018 to the following:

**Michael C. Guarino**
**Carr Allison**
**100 Vestavia Parkway**
**Vestavia, AL 35216**
**205-949-2922**
**Fax: 205-822-2057**
**Email: mguarino@carrallison.com**

**Robert Brett Adair**
**Carr Allison**
**100 Vestavia Parkway**
**Birmingham, AL 35216**
**205-822-2006**
**Fax: 205-822-2057**
**Email: badair@carrallison.com**

/s/  *Landis Sexton*

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
ADA Group LLC
4001 Carmichael Road, Suite 570
P.O. Box 231477 (36123)
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*